FRANK J. BENASSI *v.* NELSON HARRIS ET AL. [LEON M.
GABRIEL ET AL., TRUSTEES IN BANKRUPTCY OF THE
ESTATE OF HARRIS DEVELOPING ASSOCIATES, INC.,
SUBSTITUTED DEFENDANTS]

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

452

Argued March 2—decided May 24, 1960

*David S. Korn,* for the appellants (defendants).

*Charles M. Lyman,* for the appellee (plaintiff).

BALDWIN, C. J. The plaintiff brought this action in December, 1956, against Nelson Harris individually and as trustee, seeking a reconveyance of five parcels of real estate in Ansonia and Derby for

failure of consideration, or, in the alternative, "a judgment declaring the true interpretation of [the] contract and the trusts under which [Harris] holds [the] real estate." Leon M. Gabriel, Irving Groob and Milton A. Bernblum, trustees in bankruptcy of the estate of Harris Developing Associates, Inc., were allowed by the court to intervene and were substituted as parties defendant.

The trial court found the following facts: On July 10, 1956, the plaintiff conveyed the five parcels to "Nelson Harris, trustee," by warranty deed. The land lies south of the Pulaski Highway and is located partly in Ansonia and partly in Derby. The deed was recorded in Ansonia on July 11, 1956. Harris agreed that he would form a corporation to which the land would be transferred by him for development purposes and that the land would not be turned over to, or in any way involved with, Harris Developing Associates, Inc., or any other existing corporation controlled by Harris. Harris was at that time president, and owned 98 per cent of all the outstanding capital stock, of Harris Developing Associates, Inc., Woodbridge Manor, Inc., Linda Homes, Inc., and Paule-Leslie, Inc. He was engaged in an extensive program of building dwelling houses.

At the time of the conveyance on July 10, 1956, there was in existence a written agreement between the plaintiff and Harris as trustee. Prepared by Harris, the agreement was also dated July 10, 1956. In it, the plaintiff agreed to convey the five parcels presently in question, which were to be included in a subdivision, to Harris as trustee. He, in turn, agreed that upon the approval by the town planning commission of the subdivision "as proposed on a map being prepared by Clarke and Pearson, Civil Engineers," he would transfer to the plaintiff two

of the lots in the subdivision, that is, "the first two lots located on the westerly side of the proposed road (Glen Drive) together with two split-level homes to be built thereon, the same as per model presently located" on a lot "in Woodbridge Manor, Ansonia." This written agreement was recorded in the Ansonia land records on November 21, 1956. At the time the agreement was made, there was, in fact, no map in existence showing "the first two lots ... on ... the proposed road (Glen Drive)." The approval of the proposed subdivision by the Ansonia town planning commission, which Harris had agreed to secure, was never obtained. On December 11, 1956, an involuntary petition in bankruptcy was filed against Harris Developing Associates, Inc., and it was thereafter adjudicated a bankrupt. Involuntary petitions in bankruptcy were also filed against Woodbridge Manor, Inc., Linda Homes, Inc., and Paule-Leslie, Inc. All four bankruptcy proceedings were, by order of the bankruptcy court, consolidated on April 26, 1957, and the assets of the estates were designated as the property of the estate of Harris Developing Associates, Inc. In May, 1957, Harris quitclaimed the five parcels to the defendants, that is, the trustees in bankruptcy of the estate of Harris Developing Associates, Inc. The deed expressly provided: "The purpose of this deed is to convey all the right, title and interest of Nelson Harris, acquired from Frank J. Benassi by deed dated July 10, 1956, the premises described in said deed being acquired for the benefit of the Harris Developing Associates, Inc." This provision was inserted by Harris' attorney after Harris had signed the deed, but with his knowledge. Harris totally failed to perform the obligations set forth in the agreement of July 10, 1956.

An order restraining actions in which Harris Developing Associates, Inc., was a party was issued by the bankruptcy court on January 30, 1957. The defendants, in October, 1957, March, 1958, and October, 1958, moved in the Superior Court for an order staying the case at bar, but their motions were denied. They were, however, upon their motion, substituted for Harris as parties defendant. They filed an answer to the complaint, with special defenses; the plaintiff replied; and on the issues so framed the case was tried. The court rendered judgment canceling the plaintiff's warranty deed of July 10, 1956, by which the five parcels were conveyed to Harris as trustee, as well as the subsequent quitclaim deed by Harris to the defendants, and declaring that the title to the parcels was in the plaintiff.

The defendants claim, in effect, that the conveyance to Harris as trustee was a conveyance to Harris Developing Associates, Inc., and should inure to the benefit of the creditors of the bankrupt corporations. The defendants have made a broad attack on the finding, but they press only the alleged errors concerned with the findings to the effect that Harris agreed that the parcels would be developed by him through a new corporation to be formed and that he would hold them as trustee for this new corporation and would not turn them over to, or in any way allow them to become involved with, Harris Developing Associates, Inc., Woodbridge Manor, Inc., or any other existing corporation. There was adequate evidence to support these findings and they cannot be disturbed. Practice Book § 396; *Dunn* v. *Santino*, 139 Conn. 352, 355, 93 A.2d 726.

The defendants claim that the equitable relief given to the plaintiff was not warranted by the cir-

cumstances of this case—that, in short, rescission and cancellation of a conveyance for failure of consideration are, in the absence of a forfeiture clause in the deed, allowed only where there has been a conveyance upon consideration of support of the grantor. *Caramini* v. *Tegulias,* 121 Conn. 548, 552, 186 A. 482, 112 A.L.R. 666 & note, 670; *Penfield* v. *Penfield,* 41 Conn. 474, 480; *Peck* v. *Hoyt,* 39 Conn. 9, 15. "If the performance received from the plaintiff by the defendant is a transfer of land . . . and the defendant thereafter commits a total breach, the plaintiff can get a decree, on such terms as justice may require, for the specific restitution and retransfer of the property if the circumstances are such that other remedies are inadequate, and if (a) the subject of the property still exists and the interests of innocent purchasers for value and of the defendant's creditors will not be unjustly affected; and (b) the facts are such as to make restitution an available remedy [in equity], except that instead of the requirement of an offer to return the consideration . . . the decree for specific restitution may be made conditional on such return or on payment of its value." Restatement, 2 Contracts § 354; *Savannah, F. & W. Ry. Co.* v. *Atkinson,* 94 Ga. 780, 783, 21 S.E. 1010; *Pironi* v. *Corrigan,* 47 N.J. Eq. 135, 145, 20 A. 218; *Putnam County Supply Corporation* v. *Mendota Mining Co.,* 285 S.W. 409, 411 (Mo.); *Tarry* v. *Johnston,* 114 Neb. 496, 502, 208 N.W. 615; *Bushner* v. *Bushner,* 134 Colo. 509, 517, 307 P.2d 204; *Michel* v. *Hallheimer,* 56 Hun 416, 417, 10 N.Y.S. 489; 5 Corbin, Contracts, p. 533; 5 Williston, Contracts (Rev. Ed.) § 1456. The claim made by the defendants as to the law in cases such as this is expressly repudiated by Williston. See 5 Williston, op. cit., p. 4067, n.2. The rule stated also applies

to personal property of a unique character. *Alder* v. *Drudis,* 30 Cal. 2d 372, 383, 182 P.2d 195; *Orebaugh* v. *Badger,* 279 Mass. 54, 61, 180 N.E. 529. The defendants as trustees are not innocent purchasers for value. They paid nothing for the quitclaim deed from Harris, and the deed purports to convey only such title as Harris had. Their title is no better than the title he had. *O'Brien* v. *Doolittle,* 91 Conn. 354, 357, 99 A. 1055; *More* v. *Western Connecticut Title & Mortgage Co.,* 128 Conn. 360, 371, 23 A.2d 128. It does not appear that any creditors of Harris individually, with the exception of the plaintiff, were involved. The plaintiff received nothing from Harris, and therefore there is no occasion for the plaintiff to offer to return anything. The facts were appropriate for the application of the rule.

The conclusion of the court that the plaintiff had no other adequate remedy is well founded. The defendants, who held the legal title to the land, were substituted as parties defendant upon their assertion that the conveyance from the plaintiff to Harris, as trustee, was for the benefit of the Harris Developing Associates, Inc. The court specifically found that assertion to be untrue. The use of the word "trustee" was a nullity; General Statutes § 47-20; and could not make Harris ipso facto a trustee. The defendants were not parties to Harris' agreement with the plaintiff and could not be required specifically to perform it or to pay damages for its breach. Furthermore, damages would be at best speculative and incapable of ascertainment. The only relief adequate and available was the cancellation of the plaintiff's deed to Harris as trustee and of Harris' deed to the defendants.

The defendants claim that this suit was brought

prematurely. The contract was made July 10, 1956. Suit was started in December, 1956. Harris, in the intervening period, had not even begun his performance of the contract. Under all the circumstances, at least a start by Harris could reasonably have been expected within four months. Where no time for the performance of a contract is contained within its terms, the law presumes that it is to be performed within a reasonable time. *Texas Co.* v. *Crown Petroleum Corporation,* 137 Conn. 217, 227, 75 A.2d 499; *Santoro* v. *Mack,* 108 Conn. 683, 689, 145 A. 273. The defendants' claim is without merit.

The defendants challenge the power of the Superior Court to proceed to judgment. They claim error in the denial of their motions for a stay of proceedings. The plaintiff's deed of July 10, 1956, was, in spite of the description of the grantee as "Harris, trustee," in legal effect a conveyance to Harris individually. Harris Developing Associates, Inc., was not adjudicated a bankrupt until January, 1957. It was not until May, 1957, that the deed from Harris to the defendants was given or that they claimed that Harris Developing Associates, Inc., had any interest in the parcels. The defendants made their claim only on the basis of the insertion in the quitclaim deed, after its execution, of language saying, in effect, that the parcels had been acquired by Harris for the benefit of Harris Developing Associates, Inc.

A bankruptcy court has jurisdiction to determine title to property in the actual or constructive possession of the bankrupt at the time of the adjudication of bankruptcy. *Thompson* v. *Magnolia Petroleum Co.,* 309 U.S. 478, 481, 60 S. Ct. 628, 84 L. Ed. 876; 6 Am. Jur. 582, § 44. Also, under § 70c of the Bankruptcy Act, a trustee in bankruptcy is vested,

as of the date of the bankruptcy, with all the rights of an ideal lien creditor in the property of the bankrupt. 52 Stat. 881, as amended, 11 U.S.C. § 110(c) (1958). At the time of the adjudication in bankruptcy of Harris Developing Associates, Inc., however, it had no ownership rights in the parcels and no actual or constructive possession of them. Title and possession were in Harris and remained in him until the defendants attempted to sweep it into the estate of the bankrupt corporations by obtaining the quitclaim deed from Harris. The plaintiff's equitable interest in the property attached long before this conveyance from Harris to the defendants. No question of the plaintiff's good faith is involved. It does not appear that Harris was at any time bankrupt. The defendants had nothing to do with Harris' assets as an individual. Had it not been for Harris' deed to the defendants after the adjudication that the corporations were bankrupt, the defendants would have no shadow of justification for a claim that the property came into the actual or constructive possession of any of the bankrupt corporations. There would have been no occasion for the deed if any of the corporations, as distinguished from Harris, had had any interest in the property at the time of, or before, the adjudication of bankruptcy. The defendants must stand in Harris' shoes. They cannot successfully assert any infirmity in the recording of the written agreement of July 10, 1956, and the notice of the pendency of the present action to show lack of knowledge of the plaintiff's claim. They, upon their own motion, were substituted as parties defendant. They could not, by action in the bankruptcy court, oust the state court of jurisdiction. *Cline* v. *Kaplan,* 323 U.S. 97, 98, 65 S. Ct. 155, 89

L. Ed. 97; *Metcalf* v. *Barker,* 187 U.S. 165, 175, 23 S. Ct. 67, 47 L. Ed. 122; *Peters* v. *Bowers,* 61 Colo. 534, 545, 158 P. 1101; *Skilton* v. *Codington,* 185 N.Y. 80, 85, 77 N.E. 790; see *Frank* v. *Vollkommer,* 205 U.S. 521, 529, 27 S. Ct. 596, 51 L. Ed. 911; *Rice* v. *Kelly,* 226 Ky. 347, 350, 10 S.E.2d 1112; 2 Collier, Bankruptcy (14th Ed.) § 23.17.

There is no error.

In this opinion the other judges concurred.