[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE MOTION FOR CONTEMPT, # 174
The present case is before the court on the defendant's motion for contempt claiming that the plaintiff has violated the terms of the judgment of dissolution. She has requested an order requiring the plaintiff to pay for tuition, room and board, and college-related expenses for the parties' youngest son, Benjamin. For the reasons stated below, the court denies the motion.
The judgment of dissolution between the parties dated September 10, 1991, required the plaintiff to pay for certain past-majority educational expenses of their three minor children. Article 10 of the Separation Agreement entered into August 10, 1991, and incorporated into the judgment provides that:
 HUSBAND agrees to pay the tuition of any private schools or undergraduate colleges the parties' children choose to attend. HUSBAND shall be consulted prior to the decision of such school or college. . . . The children must apply for any scholarships or financial aid [f]or which they may qualify and the WIFE shall cooperate in obtaining said scholarships.
 The HUSBAND also agrees to pay fully the room and board of any private schools or undergraduate colleges the parties' children choose to attend so long as WIFE's income is below the "Index,"[1] as set forth [in the agreement]. . . .
 The parties shall share equally all other related expenses pertaining to the children's private school or undergraduate college education over and above tuition and room and board.
In enforcing the separation agreement, the court must read and construe it as a contract:
 In giving meaning to the terms of a contract, the court should construe the agreement as a whole, and its relevant provisions are to be considered together. The contract must be construed to give effect to the intent of the contracting parties. This intent must be determined from the language of the instrument and not from any intention either of the CT Page 11339 parties may have secretly entertained. [I]ntent . . . is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. When the language is clear and unambiguous, however, the contact is to be given effect according to its terms. In such a case, no room exists for construction.
(Internal quotations and citations omitted.) Greenburg v. Greenburg,26 Conn. App. 591, 595-597, 602 A.2d 1056 (1992).
The evidence established here that Benjamin entered Louisiana State University at Alexandria (LSU-A) last year, his father paying for his tuition and various college-related expenses. Under the court's previous order,[2] the plaintiff did not pay for room and board, as Benjamin was living at home with his mother. The evidence also established that at some time during that semester, Benjamin dropped out of school without finishing the term. Finally, the evidence showed that while at LSU-A, he was awarded a need-based federally-assisted student loan of $2,400, of which he received $1,200 before he dropped out of school. With that money, he bought a car. After dropping out, he forfeited the remaining $1,200.
The parties disagree about the exact circumstances under which Benjamin left school. The defendant testified that she was hospitalized for psychological problems during that time period, and that Benjamin was also having a lot of problems then, including a drug problem. She also testified that she had financial problems at the time, and that Benjamin found it hard to stay in school. She said that her son told her that during that time he called his father for help, and that the plaintiff encouraged him to drop out of LSU-A and come to Connecticut to attend college. The plaintiff testified that his son called him, told him his mother had been arrested (which the defendant does not contest), and that as a result he was having difficulty paying for his bills and staying in college. The plaintiff testified that he sent his son $1,200 to help with his financial problems, but his son then dropped out of school and spent the money on crack cocaine. The defendant said that Benjamin has since attended one session of a rehabilitation program and stopped using drugs.
The defendant and her son have since moved to Florida, where they now live. Whatever the reason that Benjamin dropped out of LSU-A, the defendant testified that he wants to attend Florida Keys Community CT Page 11340 College (FKCC) and will earn 10 credits this semester taking a part-time schedule of astronomy, jewelry making, and introductory photography. The defendant testified that, because Benjamin dropped out of LSU-A, her son is ineligible for need-based federal financial assistance until he completes a semester of study in good standing. He will face out-of-state tuition rates during his first year at FKCC and will not receive academic credit for his studies at LSU-A.
Although the facts of this case differ in some respects from those presented to the court on the earlier motion for contempt filed by the defendant, #163, and decided previously by this court, the facts here of the two cases nonetheless present very similar issues. The court's previous order is now on appeal. In that earlier decision, this court held that the plaintiff satisfied his obligations under Section 10 of the separation agreement to pay the college expenses of the parties' oldest son when three years earlier he paid for the initial tuition and college expenses until that son, like Benjamin here, dropped out of college:
 The defendant has asserted that the separation agreement imposes a life-time requirement on the plaintiff to pay for tuition, room and board, and other college-related expenses. The court finds that to be an unreasonable interpretation of the language of the separation agreement. Since the judgment does not specify the time period during which the plaintiff would be obligated to pay for tuition, room and board and other college expenses, the court will apply the general contact principle that where no time for the performance of a contact is contained within its terms, the law presumes that it is to be performed within a reasonable time. Benassi v. Harris. 147 Conn. 451, 458, 162 A.2d 521 (1960); see 3A Corbin, Contracts § 716, p. 366. While the language of the agreement imposes no time limits on plaintiff's obligation to pay for tuition, this court believes the plaintiff fulfilled the reasonable and foreseeable obligations imposed on him by the separation agreement and intended by the parties in this regard when he paid for tuition and college expenses for James when he last attended NCCC.
Bonhotel v. Bonhotel, supra.
The plaintiff asserts that the court's decision here should be governed by that earlier decision. The court concludes, however, that the facts here, although similar to those earlier, are sufficiently different that CT Page 11341 the plaintiff's obligation to pay for tuition is still in effect. It is not unusual for young people to have some ups and downs in their attempts to attend college. A parent agreeing to pay for post-majority college expenses cannot assume that his or her children will necessarily complete college in four consecutive years. While this court believes that the length of the interval between dropping out of college and seeking to reenter school, along with the other facts of that case, relieved the plaintiff of his obligation to pay for the oldest son's college expenses, the court does not believe that to be true in the present case.
Here, the absence of his mother from the home (for whatever reason) while Benjamin attended LSU-A last school year, Benjamin's resulting financial difficulties, and his drug problem all contributed to his dropping out of school. There is nothing in the dissolution judgment or the separation agreement it incorporated that suggests the parties intended for the type of reverses Benjamin suffered here to extinguish the plaintiff's obligations to pay for tuition, room and board of an undergraduate college, and half of other college-related expenses.
On the facts here, however, the court does not believe that the plaintiff's continuing obligation to pay for Benjamin's college tuition and other college-related expenses warrants granting the defendant's motion for contempt, for several reasons:
First, the evidence does not establish that Benjamin wants to or will in fact attend college this fall. The plaintiff and defendant disagree about this point. Although the defendant offered into evidence what she said was a bill for Benjamin to attend college in the first term of the 2000-2001 academic year (Defendant's Exhibit 1), the text of that exhibit instead appears to indicate it is a bill for the second term beginning January 2001. (In the box captioned "TERM" on that Exhibit is the typed text "1/01.") Although the defendant said that Benjamin wants to attend FKCC, the plaintiff testified that Benjamin told him recently that he does not want to resume attending college yet. Each parent has a financial interest in their own testimony and the court was unable to determine from their demeanor and testimony which one to believe on this point. As this motion is the defendant's, she has, and failed to meet, her burden of proof on this issue.[3]
Second, the separation agreement requires the defendant and her children to consult with the plaintiff "prior to the decision of such . . . college." Here the defendant admitted that she or her son had not consulted the plaintiff. She even testified she did not believe they were required to do so because she said that FKCC was the only school her son could attend. She did not explain why, however, or offer any evidence to establish that fact other than her own testimony, which the court does CT Page 11342 not find persuasive on that point.
The requirement in the separation agreement that the plaintiff be consulted prior to the decision to attend a particular college does not mean the plaintiff has a veto right over that choice, or must concur in the decision of his offspring as to which college to attend. All the agreement requires is prior consultation — that before any of their offspring decides to attend a particular college, parents and son should share and exchange their views on the choice of a college. Such consultation safeguards the plaintiff's interest that his son make a prudent decision. In agreeing to pay for certain post-majority educational expenses so long as he was consulted first, the plaintiff secured the opportunity to seek to influence the decision that would impose the financial responsibility he voluntarily assumed. Such consultation would have given him the opportunity, for example, to explore with Benjamin whether attending college in Connecticut would better suit his son's needs and interests. There being no prior consultation in this instance, however, the defendant has not complied with a prerequisite for the plaintiff to be financially responsibility for post-secondary educational expenses.
Third, with regard to other college-related expenses, the defendant testified that she wanted the plaintiff to share in the costs of Benjamin's car expenses, transportation to and from college, and clothing. Books, lab fees, other school charges for attending school than tuition (e.g., student activity fees), and the cost of travel to and from college are all reasonable college-related expenses that can be easily quantified — e.g., by specific charges imposed by the school, the cost of bus fare or a mileage reimbursement rate for travel to and from school, etc. Without any specification of the amount sought for clothing or the cost of specific items of apparel, it is impossible to determine whether the defendant's requested payment for clothing is a "related [expense] pertaining . . . to college education" so as to impose responsibility on the plaintiff to share in paying for it.
Similarly, it was not clear from the evidence the defendant offered what car expenses she seeks the plaintiff to pay half of. Although she testified that her son bought a car last year with the proceeds from the student loan, for example, it is not clear if that car is fully paid off or whether she is seeking payment toward a car loan. Certain car expenses may not be reasonably attributable to the cost of attending college. If this matter comes before the court again, the defendant must present a specific proposal as to what car expenses she is seeking payment for and why they are "related expenses pertaining" to Benjamin attending school.
Under the terms of the Separation Agreement, there is no doubt, other CT Page 11343 prerequisites such as prior consultation and cooperation in obtaining financial assistance being satisfied, that the plaintiff is responsible for paying for his children's post-secondary educational expenses as set forth in that agreement. On the record here, however, without the sort of detail described above, the court cannot find the plaintiff in contempt for failure to pay such expenses in this matter. There is insufficient evidence before the court as to what might be reasonable college-related expenses for which the plaintiff must share the cost.
The court thus denies the motion for contempt for his failure to pay Benjamin's tuition expenses or half of his other college-related expenses (except for room and board, which is discussed below) this year, but without prejudice. A college education is a valuable and important educational experience, and the court does not want to deprive Benjamin of the opportunity to obtain financial help from his father to attend college if Benjamin wants to attend college. The court will consider a motion for reconsideration of this decision if either party intends to offer the testimony of Benjamin or other evidence that he is actually attending college — and if the other prerequisites for the plaintiff's financial obligations are also met.
In addition, the court orders the plaintiff to reimburse the defendant or Benjamin for the costs of tuition (whichever one might pay that fee) and to share equally with the defendant in paying other college-related expenses (except for room and board) if the plaintiff is consulted before "the decision to attend" such college[4] and Benjamin afterward then actually attends college this year. In view of the lack of specificity in the evidence here as to what such other expenses might be, if after such consultation with the plaintiff, Benjamin in fact attends college in the fall or spring term of this academic year, the defendant should submit periodic statements to the plaintiff detailing any such expenses she claims they should share equally. Any contribution by Benjamin toward room and board or any of these related expenses should be credited toward whichever parent has responsibility for the particular expense in proportion to that parent's financial responsibility for it.
This court's earlier decision ruled that the separation agreement does not require the defendant to pay for room and board for one of the parties' children lives at home while attending college:
 [T]he language of the dissolution agreement does not require the plaintiff to pay for room and board expenses when he lives at home. The language of the separation agreement only covers "room and board of the college," and the court reads this language to mean such expenses imposed by the college itself for CT Page 11344 living at the college and does not cover living expenses at home or on one's own.
Bonhotel v. Bonhotel, supra. The court continues to believe that decision to be correct and thus, for that reason as well to the lack of prior consultation and as specified below, denies the defendant's motion for contempt as to this item. Even were that prior ruling overturned on appeal, however, the defendant has not established a reasonable basis for a finding of contempt or to compel the plaintiff to pay this expense now.
The defendant testified that she was seeking an award of $650 per month for room and board expenses while Benjamin lives at home and attends college. The defendant offered no testimony that such a charge, though not an amount that shocks the conscience, is reasonably related to her expenses in providing room and board for her son while he attends college. Although the defendant assumed responsibility to share in the costs of related expenses and to pay for "room and board of any . . . undergraduate colleges the parties' children choose to attend," that obligation did not create a blank check; the amount of these expenses imposed on the plaintiff must be reasonably related to the obligation he assumed. If the separation agreement were to be construed to impose on the plaintiff responsibility to pay for room and board for the parties' children to live at home while attending college, there must still be some factual demonstration that the amount claimed for that expense is reasonable, based on either the cost to the defendant of providing room and board or other factors. Should her appeal of the prior order be sustained as to room and board, a further hearing will be necessary to determine the reasonableness of any request she is making for this item.[5]
Finally, since the defendant has not prevailed on her motion for contempt, the court declines to order the plaintiff to reimburse her for the costs of pursuing this motion.
SO ORDERED.
BY THE COURT
STEPHEN F. FRAZZINI JUDGE OF THE SUPERIOR COURT